ELEVATOR APPLIANCE CO., Inc., et al.
v. BROOKS et al.

No. 8266.

District Court, E. D. New York.

April 12, 1938.

Thomas A. Hill, of New York City, for plaintiffs.

H. C. Bierman, of New York City, for defendants.

ABRUZZO, District Judge.

This suit is brought in equity for patent infringement. The plaintiffs claim a patent on an electromechanical interlock for self-service elevators. The lock prevents the hall door, leading from the hall to the elevator car or cab, from being opened until the elevator cab or car is at the floor.

The two patents in suit are numbered 1,945,734 and 2,060,283. The plaintiffs concede that locks functioning in the manner described in his two patents were used in the art long prior to the patents in suit. They claim that locks of the prior art were so designed and installed that a space of from about 6 to 8 inches remained between the shaft side of the hall and the front edge of the elevator cab or car. This space was dangerous to life and limb.

The plaintiffs contend that the lock features and mode of operation to be considered involve principally those outside the lock casing. The structure and mode of operation under plaintiffs' patent made possible great improvements in elevator service and life-saving results, to wit, the elimination of this large space.

Claims 1, 3, 4, 6, and 7 of patent No. 1,945,734 were disclaimed by the plaintiffs, and in view of this disclaimer they contended that it would be unnecessary to try claims 2 and 5. The plaintiffs desired to withdraw patent No. 1,945,734 because of this disclaimer but the court refused to permit them to do so. By virtue of the disclaimer under this patent, only claims 2 and 5 remain. No testimony of infringement was offered by the plaintiffs with respect to claims 2 and 5 of patent No. 1,945,734. Plaintiffs assert that patent No. 2,060,283 is a continuation of the patent previously mentioned. In view of the position taken by the plaintiffs, patent No. 1,945,734 is held not to be infringed.

The question of the validity and infringement of patent No. 2,060,283 is therefore left to be determined. Plaintiffs rely on claims 2, 3, 4, and 5 as well as 17 and 20, and contend they should be sustained. They read as follows:

"2. In an elevator hatch-way door and frame combination having a hinged elevator hatch-way door and a frame therefor, a lock operatively associated therewith, said lock extending rearwardly of the face of and within said frame and clear of the door opening thereof, electrical switches in said lock, means in combination with one of said switches for locking said door, means externally of said lock in the path of movement of an elevator car for actuating said first mentioned means, said door-frame having an opening therethrough leading to said lock, said last mentioned means extending beyond said door and adapted to pass through said opening into said lock, means in combination with said door and permanently projecting therefrom for operating the other of said switches simultaneously with the operation of said door."

"3. In an elevator hatch-way door and frame combination having a hinged elevator hatch-way door and a frame therefor, a lock operatively associated therewith, said lock extending rearwardly of the face of and within said frame and substantially clear of the door opening thereof, electrical switches in said lock, means in combination with one of said switches for locking said door, means externally of said lock in the path of movement of an elevator car for actuating said first mentioned means, said door-frame having an opening therethrough leading to said lock, said last mentioned means extending beyond said

door and adapted to pass through said opening into said lock, means in combination with said door permanently projecting therefrom for operating the other of said switches simultaneously with the operation of said door, said first mentioned means being entirely within said lock when said door is opened."

"4. In an elevator hatch-way door and frame combination having an elevator hatch-way door and a frame therefor, a lock operatively associated therewith, said lock extending rearwardly of the face of and within said frame and substantially clear of the door opening thereof, electrical switches in said lock, means in combination with one of said switches for locking said door, means externally of said lock in the path of movement of an elevator car for actuating said first mentioned means, and means in combination with said door for operating the other of said switches simultaneously with the operation of said door, said last mentioned means comprising an angle plate having one leg thereof parallel with the face and extending beyond the end of said door, and having short circuiting means projecting therefrom adapted to pass through said frame and the casing of said lock."

"5. In an elevator hatch-way door and frame combination having a hinged elevator hatch-way door and a frame therefor, a lock operatively associated therewith, said lock extending rearwardly of the face of and within said frame and substantially clear of the door opening thereof, electrical switches in said lock, means in combination with one of said switches for locking said door, means externally of said lock in the path of movement of an elevator car for actuating said first mentioned means, said door-frame having an opening therethrough leading to said lock, said last mentioned means extending beyond said door and adapted to pass through said opening into said lock, means in combination with said door for operating the other of said switches simultaneously with the operation of said door, said last mentioned means comprising a short circuiting member adapted to be moved into said lock simultaneously with the movement of said door."

"17. In an elevator hatch-way door and frame combination having an elevator hatch-way door and a frame therefor, a lock operatively associated therewith, said lock extending rearwardly of the face of

and within said frame and substantially clear of the door opening thereof, electrical switches in said lock, means in combination with one of said switches for locking said door, means externally, of said lock in the path of movement of the elevator car for actuating said first mentioned means, means in combination with said door for operating the other of said switches simultaneously with the operation of said door, said last mentioned means comprising an angle plate having one leg thereof parallel with the face and extending beyond the end of said door, and having short circuiting means projecting therefrom adapted to pass through the casing of said lock, said frame extended in alignment with the plane of the face of said door and parallel with said lock."

"20. In an elevator hatch-way door and frame combination having a hinged elevator hatch-way door and a frame therefor, a lock operatively associated therewith, said lock extending rearwardly of the face of and within said frame and substantially clear of the door opening thereof, electrical switches in said lock, means in combination with one of said switches for locking said door, means externally of said lock in the path of movement of an elevator car for actuating said first mentioned means, said door-frame having an opening therethrough leading to said lock, said last mentioned means extending beyond said door and adapted to pass through said opening into said lock, means in combination with said door and permanently projecting therefrom for operating the other of said switches simultaneously with the operation of said door, and said lock being also substantially clear of the elevator shaft."

These claims describe the type of lock and the position in which the lock is placed and contemplate its being placed so that it is substantially clear of the elevator shaft. It is not entirely flush with the entrance to the elevator leading from the hall but clear enough to meet the legal requirement since the space which is left is a very small one. It seems, therefore, to be the position of the plaintiffs that, while the lock in question contains many of the essentials of prior art locks, the placing of this particular lock eliminates the large space between the cab or car of the elevator and the entrance to the said cab or car from the hall. This, they say, is the invention under the patent in suit.

The defendants resist the validity of the claims under patent No. 2,060,283. They set up a defense of prior art and usage. They take the position that plaintiffs' invention is not new, nor was the inventor of plaintiffs' patent the first to use the type of lock indicated by Plaintiffs' Exhibit 4. This exhibit contains all of the elements of plaintiffs' invention.

The plaintiffs contend that their lock was the first of its kind to be placed wholly within the frame, thereby deriving important advantages. It eliminated a space which had previously been found in elevator structures.

Cullmer, the inventor of the patent in suit, was a witness for the plaintiffs. His testimony on this point was very confusing to say the least. He testified that Plaintiffs' Exhibit 4 is the structure that he claims he patented. It consists of an arm extending out from the door frame into the elevator shaft or well. As the elevator car or cab approaches this arm, which has a rubber wheel on it, a contact is created so that the arm is moved toward the frame of the door a distance of approximately 1 inch. When this occurs the lock is electrically released so that any passenger may enter or leave the elevator cab or car. This contrivance leaves a space of about 1 inch between the elevator door leading from the hall and the elevator cab or car. Exhibit 5, offered in evidence, is admittedly a prior art structure and antedated plaintiffs' lock structure.

Comparing Exhibit 4 with Exhibit 5, it will be noted that both locks operate in exactly the same manner. The only difference is that the box containing the lock in Exhibit 4 is wholly within the door frame, while, in Exhibit 5, the box containing the lock extends outside the door frame into the elevator shaft or well about 1¼ inches to 1½ inches. The elevator cab or car (as shown by Exhibit 5), when it reaches the hall entrance is about 1½ inches away from the door leading from the hall. Thus, the material difference between Exhibit 4 and Exhibit 5 is that Exhibit 5 leaves an approximately one-half inch larger space between the door sill and the entrance leading to the hall and the floor of the elevator car or cab; otherwise they are as alike as two peas in a pod. The space of 1½ inches caused by the protrusion of the box containing the lock (Exhibit 5) could be eliminated by merely cutting out a small section of the floor of the elevator cab or car, thus permitting this small box to pass through the opening so cut. This box extends only 3 inches across the shaft opening and 1½ inches into it, Cullmer so testified (Rec. p. 52).

Patent No. 991,691 of May 9, 1911, which is Plaintiffs' Exhibit F, Cullmer admitted, related to a lock concealed within the frame for a swinging door. He further stated that this was a well-known method in the art prior to his alleged invention (Rec. p. 63).

Patent No. 986,327 relates to a magnetic switch wholly within the frame, and patent No. 1,047,160 shows an electrical lock within the frame. Patent No. 1,102,477 indicates that a mechanical lock can be placed either in or on the frame. Patent No. 1,901,517 in Fig. 6 depicts an electrical lock wholly within the frame.

The various patents in evidence indicate clearly that the patentee was not the first to conceal his lock wholly within the frame nor was he the first to eliminate the space between the elevator car or cab and the entrance leading from the hall (compare Plaintiffs' Exhibits 4 and 5). It is obvious that prior art was to a great degree responsible for plaintiffs' patent.

 Under these circumstances, the claims under patent No. 2,060,283 must accordingly be declared invalid.